AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

FILED
RICHARD W. NAGEL
CLERK OF COURT

1/7/21

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WEST. DIV. DAYTON

| In the Matter of the Search of | | |
|---|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) | Case No. 3:21MJ9 |
| 2972 Summit Springs Drive, Columbus, Ohio, including any outbuildings, garages, sheds or curtilage at this location | ) ) ) | |

## APPLICATION FOR A SEARCH WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Attachment D

located in the _____Southern_____ District of _____Ohio_____ , there is now concealed *(identify the person or describe the property to be seized)*:

Attachment E

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC s. 841/846 | possession with intent to distribute controlled substances/conspiracy |
| 21 USC s. 843(b) | use of a telephone communication facility |

The application is based on these facts:

See Attached Affidavit of Jason Barnes

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

JASON BARNES (Af

*Applicant's signature*

Jason Barnes, TFO of the DEA

Sworn to before me and signed in my presence via facetime.

Date: __1/7/21__

City and state: Dayton, Ohio

Sharon L. Ovington, US Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH AND SEIZURE WARRANT

I, Jason M. Barnes, a Task Force Officer (TFO) of the Drug Enforcement Administration, United States Department of Justice (hereinafter referred to as the "Affiant"), being duly sworn, deposes as follows:

### INTRODUCTION

1.      Affiant is an "Investigative or Law Enforcement Officer" of the United States Drug Enforcement Administration within the meaning of Title 21, United States Code, Section 878. That is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code, Section 878.

2.      I am a Task Force Officer ("TFO") with the U.S. Drug Enforcement Administration ("DEA"), and have been since January 2019.  I have been employed in law enforcement since December 2001.  I currently serve as an officer with the Dayton Police Department ("DPD").  I have been assigned to Patrol Operations and am currently assigned to the Narcotics Bureau.  I have extensive prior experience in investigating drug cases that resulted in successful prosecution of persons involved in trafficking of drugs, possession of drugs and gun related offenses.  I have conducted narcotics-related arrests, executed search warrants that resulted in the seizure of narcotics and weapons, participated in undercover narcotic purchases, and supervised the activities of informants who have provided information and assistance resulting in narcotics purchases.  Through training and experience, I am familiar with the manner in which persons involved in the illicit distribution and sales of controlled substances often operate.  These subjects usually attempt to conceal their identities and the locations at which they reside, operate, or store drugs and drug proceeds.

1

3. Along with other agents and task force officers of the DEA and other agencies, your Affiant is currently involved in an investigation into a Drug Trafficking Organization (DTO) regarding the distribution of narcotics, and conspiracy to do the same of violation of 21 U.S.C. § 846 and 841(a)(1). This Affidavit is submitted in support of an Application for a Search Warrant authorizing the search of the following premises for the items described in Attachment E, incorporated herein by reference:

    a. **615 Forest Avenue, Dayton, Ohio** (hereinafter referred to as the **"TARGET RESIDENCE 1"**), which is more fully described in Attachment A and is incorporated by reference;

    b. **2106 Picadilly Avenue, Dayton, Ohio** (hereinafter referred to as the **"TARGET RESIDENCE 2"**), which is more fully described in Attachment B and is incorporated by reference;

    c. **7663 Shady Water Lane, Miami Township, Ohio** (hereinafter referred to as the **"TARGET RESIDENCE 3"**), which is more fully described in Attachment C and is incorporated by reference; and

    d. **2972 Summit Springs Drive, Columbus, Ohio** (hereinafter referred to as the **"TARGET RESIDENCE 4"**), which is more fully described in Attachment D and is incorporated by reference.

4. As outlined below, there is probable cause to believe violations of Title 21, United States Code, Sections 841(a)(1) (possession with the intent to distribute and to distribute controlled substances), 843 (use of a telephone communication facility), and 846 (conspiracy), are being committed, and that evidence, fruits, and instrumentalities of these violations, as well as contraband, as set forth more fully in Attachment B, is presently located in the **TARGET**

**RESIDENCE 1, TARGET RESIDENCE 2, TARGET RESIDENCE 3 and TARGET
RESIDENCE 4.**

5.      Affiant is familiar with the facts and circumstances described herein and makes
this affidavit based upon personal knowledge derived from Affiant's participation in this
investigation, conclusions Affiant has reached based on Affiant's training and experience, and
upon information Affiant believes to be reliable from the following sources:

   a.   Law enforcement databases

   b.   Oral and written reports about this investigation and other investigations, which
        affiant has received from federal agents and agents from state and local law
        enforcement agencies;

   c.   Physical surveillance conducted by federal and local law enforcement agents, the
        details of which have been reported to affiant either directly or indirectly;

   d.   Information developed from confidential sources;

   e.   Public records

   f.   Laboratory reports

   g.   GPS location data received from court-authorized search warrants

This Affidavit is intended to show merely that there is sufficient probable cause for the requested
warrant and does not contain all the facts known to me regarding this matter.  The
communications and conversations described in this Affidavit have been summarized,
paraphrased and/or synthesized and have not necessarily been recounted in full or verbatim.

## **PROBABLE CAUSE**

6.      The United States, including the Drug Enforcement Administration Dayton

Resident Office, is  conducting a criminal investigation of Brandon RAINEY, aka B Rainey

(hereinafter referred to as "RAINEY"), Frank CHATMAN JR, aka Frankie Joe, aka Mexico Joe

(hereinafter referred to as "CHATMAN JR.") and Martyana MOON (hereinafter referred to as

"MOON") and others concerning potential violations of federal drug trafficking laws, including

21 U.S.C. §§ 841(a)(1) (possession with intent to distribute and distribution of controlled

substances), 843(b) (use of a telephone communication facility to facilitate a Title 21 offense),

and 846 (conspiracy).

7.      Based on their investigation, investigators have learned that RAINEY,

CHATMAN JR. and MOON are part of a Drug Trafficking Organization (DTO) selling crystal

methamphetamine, fentanyl and cocaine in the greater-Dayton area.

8.      Investigators reviewed an interview with a Source of Information (SOI)

conducted by the Dayton Resident Office in June of 2017.  The SOI stated that Eduardo

BONILLA-BARILLLAS (hereinafter referred to as "BONILLA") sent the SOI to a black male

known by the SOI as "Frankie Joe" for the purchase of an ounce of heroin.  The SOI stated

he/she believed "Frankie Joe" was the brother to a black female who lives in Dayton.  The SOI

sent a separate person on behalf of the SOI to travel to Dayton Ohio to acquire an ounce of

heroin for $1900.00 dollars from "Frankie Joe".  The SOI stated the separate person acquired the

ounce of heroin from "Frankie Joe" and drove back to Pike County, Ohio where the heroin was

sold for $200.00 a gram.  The SOI stated that was the one and only time heroin was purchased

from "Frankie Joe."

4

9. In September 2020, Confidential Source #1 ("CS-1") relayed that RAINEY is operating a "trap house" (location used to package and sell drugs from). In particular:

a. CS-1 stated that RAINEY keeps large amounts of crystal methamphetamine, fentanyl and cocaine along with bulk United States Currency and handguns at the trap house. CS-1 stated the trap house was located at 615 Forest Avenue, Dayton Ohio (TARGET RESIDENCE 1). CS-1 indicated that RAINEY works with Frank CHATMAN JR. and that CHATMAN JR. is commonly at TARGET RESIDENCE 1. CS-1 explained that CHATMAN JR. is RAINEY'S source of supply for narcotics. CS-1 also advised that RAINEY stored additional drugs at his sister's house identified by investigators as 236 Kenilworth Avenue, Dayton Ohio

b. According to CS-1, CHATMAN JR. drives a clean white newer model two door Mercedes. CS-1 stated that if investigators observed a clean white newer model two door Mercedes parked in the parking lot behind TARGET RESIDENCE 1 that CHATMAN JR. would be at TARGET RESIDENCE 1.

c. CS-1 provided phone numbers for RAINEY including: 937-241-4542 and 513-379-1556 (which CS-1 identified as RAINEY's trap phone). or RAINEY. CS-1 provided a number of 937-516-9340 for CHATMAN JR.

d. CS-1 stated that, in early September 2020, CS-1 received a phone call from RAINEY. RAINEY directed CS-1 to TARGET RESIDENCE 1. CS-1 stated that, once at TARGET RESIDENCE 1, he/she observed "Frankie Joe" (later identified by CS-1 and investigators as Frank CHATMAN JR.), RAINEY and an unidentified Hispanic male inside TARGET RESIDENCE 1. CS-1 stated that there were large quantities of crystal

5

methamphetamine, fentanyl and cocaine along with bulk United States Currency and firearms in plain view.  CS-1 stated RAINEY and CHATMAN JR. were dividing large quantities of drugs into smaller quantities for resale.  CS-1 stated RAINEY and CHATMAN JR. were discussing illegal drug prices as well.[1]

10.     Investigators completed an administrative subpoena to Sprint Spectrum L.P. requesting subscriber information and call detail records on phone 937-516-9340.  In September 2020, Spring Spectrum L.P. reported the subscriber was a prepaid customer. Investigators conducted analysis of call detail records of cellular phone 937-516-9340.  Cellular phone 937-516-9340 had 62 contacts with 513-614-0255, which was one of two numbers provided to the Dayton Police Department (DPD) by the arrested individual concerning how to contact "Mexico" to purchase fentanyl – an event detailed below.  Cellular phone 937-516-9340 had 19 contacts with 513-379-1556, which is the number provided by CS-1 for Rainey's trap phone. Cellular phone 937-516-9340 had 4 contacts with 937-241-4542, another number provided by CS-1 for RAINEY.  Cellular phone 937-516-9340 had 1 contact with 52-442-750-1354. Notably, 52-442-750-1354 had 5 contacts with cellular phone 937-250-9642, a number being used by Adrian LITTLE, a known drug trafficker operating in the greater Dayton area.  Cellular phone 937-250-9642 was being used by LITTLE to negotiate the pickup of U.S. currency. Investigators believe the U.S. currency is from drug proceeds.

11.     On September 15, 2020, investigators observed a newer white two door Mercedes with Ohio license plate JEV2741 (hereinafter referred to as "Mercedes") parked in a parking lot behind TARGET RESIDENCE 1.  The Mercedes had a glass roof and both the driver side and

---

[1] CS-1 has provided information in the past that has been proven to be true and accurate through independent investigation and led to the issuance of search warrants and the recovery of illegal drugs, money and weapons. CS-1 is cooperating in hopes of receiving judicial consideration.

passenger side mirrors were turned in toward the windows. The Mercedes matched the description given by CS-1. Investigators used a law enforcement database to complete a record check and learned the Mercedes is a white 2017 Mercedes C 300 two door. The registered owner is Carla Lanier. According to the law enforcement database, Lanier is still the registered owner as of December 28, 2020.

12.     Investigators reviewed CHATMAN JR.'S criminal history. CHATMAN JR. is currently on parole for felonious assault with the Montgomery County, Ohio Adult Parole Authority. In 2008, CHATMAN was convicted of possession of heroin a 2nd degree felony in Common Pleas Court in Montgomery County, Ohio. CHATMAN JR. was sentenced to three years in prison. In 2008, CHATMAN JR. was convicted of trafficking in heroin, a 2nd degree felony and trafficking in heroin (in vicinity of a juvenile), a 4th degree felony in Common Pleas Court in Montgomery County, Ohio. CHATMAN JR. was sentenced to two years in prison for trafficking in heroin, a 2nd degree felony and 18 months in prison for trafficking in heroin (vicinity of a juvenile), a 4th degree felony. In 2008 CHATMAN JR. was convicted of carrying concealed weapon, a 4th degree felony. CHATMAN JR. was sentenced to 18 months in prison. CHATMAN JR.'S sentences were to be served concurrent to the possession of heroin, a 2nd degree felony conviction. In 2013, CHATMAN JR. was convicted of felonious assault (police officer) a 1st degree felony, having weapons while under disability, a 3rd degree felony and vandalism, a 4th degree felony in Common Pleas Court in Montgomery County, Ohio. CHATMAN JR. was sentenced to a total of seven years in prison.

13.     Investigators reviewed RAINEY'S criminal history. RAINEY is currently on parole for aggravated burglary with the Montgomery County, Ohio Adult Parole Authority. In 2000, RAINEY was convicted of robbery, a 3rd degree felony in Common Pleas Court in

Montgomery County, Ohio. RAINEY was sentenced to four years in prison. In 2000, RAINEY was convicted of aggravated robbery, a 1st degree felony in Common Pleas Court in Montgomery County, Ohio. RAINEY was sentenced to three years in prison concurrent to the robbery conviction in 2000. In 2010, RAINEY was convicted of aggravated burglary, a 1st degree felony in Common Pleas Court in Montgomery County, Ohio. Rainey was sentenced to three years in prison. In 2016, RAINEY was convicted of aggravated burglary, a 1st degree felony in Common Pleas Court in Montgomery County, Ohio. RAINEY was sentenced to four years.

14.     Investigators learned of an arrest made by the DPD in late September 2020 at the Food Mart located at 1413 North Main Street, Dayton Ohio (hereinafter referred to as "Food Mart") for possession of fentanyl; law enforcement had witnessed the arrested individual engage in a hand-to-hand drug transaction with an unknown black male. DPD observed the unknown black male exit the driver seat of a maroon Cadillac CTS with unknown license plate. Through information from the arrested individual, DPD learned that the unknown black male went by the name "Mexico", sold fentanyl, and was associated with two telephone numbers: 513-379-1556 and 513-614-0255.

15.     In early October 2020, an individual identified herein as CS-2 and DPD conducted a controlled purchase of suspected fentanyl from an individual believed to be RAINEY at the Food Mart. The controlled purchase was arranged through a non-recorded phone communication between CS-2 and individual believed to be RAINEY. In the course of the communication, CS-2 spoke to the individual believed to be RAINEY at 513-379-1556. CS-2 asked the individual if he was Mexico and a male voice stated he was. During the phone

communication, the individual believed to be RAINEY directed CS-2 to go to the Food Mart for the purchase.

16.     In preparation for the early October 2020 controlled purchase, DPD met with CS-2 at a neutral location, searched CS-2 for contraband, and provided CS-2 with buy money to purchase suspected fentanyl from an individual believed to be RAINEY. During the search of CS-2, no contraband was found.

17.     During the course of the operation leading to the controlled purchase in early October 2020, DPD conducted surveillance of various locations, including the Food Mart and TARGET RESIDENCE 1. Prior to the controlled purchase, DPD observed a black male, matching the physical description of RAINEY, walking east on Forest Avenue toward the Food Mart. DPD observed the black male matching the physical description of RAINEY make eye contact with CS-2 at the Food Mart. DPD observed a hand to hand drug transaction occur between the black male matching the physical description of RAINEY and CS-2. DPD observed the black male matching the physical description of RAINEY walk west on Forest Avenue and enter a silver Cadillac SUV Ohio license plate JBS1905 parked on Forest Avenue. DPD observed the black male matching the physical description of RAINEY remove a small bag from inside the Cadillac and enter the front west door of TARGET RESIDENCE 1.

18.     DPD followed CS-2 to a neutral location and collected a bag of suspected fentanyl from CS-2. CS-2 told DPD that the black male sold fentanyl to CS-2. CS-2 stated he/she asked the black male if he was Mexico, and the black male said Mexico was his brother. CS-2 described the black male who sold fentanyl as tall, approximately 40 years of age with a beard, short hair and gold teeth in the front. At a later date, CS-2 was shown a photo of

9

RAINEY from the Montgomery County JusticeWeb website. CS-2 identified RAINEY as "B" who sold CS-2 fentanyl. The suspected fentanyl was later submitted to the Miami Valley Regional Crime Laboratory for analysis and was found to be fentanyl.[2]

19.     In October 2020, Affiant contacted the Montgomery County Adult Parole Authority (hereinafter referred to as "APA") in regard to CHATMAN JR. APA reported that CHATMAN JR.'S reporting address with APA is TARGET RESIDENCE 2. CHATMAN JR. never mentioned or disclosed to APA any connection he had with TARGET RESIDENCE 3 and TARGET RESIDENCE 4. Based on my training and experience, Affiant knows that individuals who are on parole frequently hide from their supervising parole officer locations at which they engage in or transact illegal activity. Because many parolees such as CHATMAN JR. are subject to search and seizure conditions, they do not want to advise APA concerning these locations for fear that these alternate residences will be searched and their illegal activity discovered. APA reported that RAINEY'S reporting address with APA is TARGET RESIDENCE 1. Affiant researched RAINEY on numerous law enforcement databases. RAINEY listed his phone number as 937-241-4542 on a Dayton Police Department crime report. RAINEY listed TARGET RESIDENCE 1 as his residence on numerous law enforcement databases.

20.     Investigators completed an administrative subpoena to Verizon requesting subscriber information and call detail records on cellular phone 513-379-1556. In October 2020, Verizon reported the subscriber was a prepaid customer. Investigators conducted analysis of call detail records of cellular phone 513-379-1556. Cellular phone 513-379-1556 had 148 contacts

---

[2] CS-2 has provided information in the past that has been proven to be true and accurate through independent investigation and led to the issuance of search warrants and the recovery of illegal drugs, money and weapons. CS-2 provided this information on a voluntary basis in hopes of monetary reward.

with 937-516-9340, which is the number provided by CS-1 for CHATMAN JR. Cellular phone 513-379-1556 had 12 contacts with 513-614-0255, which was one of two numbers provided to DPD by the arrested individual concerning how to contact "Mexico" to purchase fentanyl.

21.     On October 20, 2020, Affiant obtained federal search warrants for the Southern District of Ohio from United States Magistrate Judge Michael J. Newman. The Search warrants were for the monitoring the electronic data from cellular phone 937-516-9340 and cellular phone 937-241-4542. Upon execution of the warrants, investigators were able to determine that CHATMAN JR. was routinely staying in the area of Miami Township, Ohio near the Dayton Mall. Based on GPS coordinates, investigators believe CHATMAN JR. was staying overnight in the area.

22.     On October 27, 2020, investigators began to attempt to locate the Mercedes based on real time GPS coordinates on cellular phone 937-516-9340. Investigators located the Mercedes parked in a parking spot in front of 7659 Shady Water Lane, Miami Township Ohio. This address was the parking lot of the Mad River Luxury Apartments (a multi-unit apartment complex).

23.     On November 2, 2020 investigators located the Mercedes backed into a parking spot in front of TARGET RESIDENCE 3. Investigators were unable to confirm the rear license plate of the Mercedes. The Mercedes had a glass roof and both mirrors turned in toward the windows while it was parked. The Mercedes matched the description of the Mercedes observed by investigators on September 15, 2020 in the parking lot behind TARGET RESIDENCE 1 and October 27, 2020 in front of 7659 Shady Water Lane. Investigators started surveillance at approximately 9:00 a.m. Throughout the surveillance the real time GPS coordinates on cellular

11

phone 937-516-9340 were within the radius of TARGET RESIDENCE 3.  Investigators

observed MOON exit TARGET RESIDENCE 3 several times carrying boxes and items to a

black 2018 Mercedes GLA 250 Ohio temporary license plate L782504.  The black Mercedes had

a CarMax license plate on the front and rear with the Ohio temporary license plate L782504

placed in the rear window (hereinafter referred to as "black Mercedes").  MOON was also

observed placing black trash bags with blue drawstrings in the rear of the black Mercedes.

MOON was also observed using a key fob to enter a dark blue 2014 Chevrolet Cruz Ohio license

plate GXT5448 (hereinafter referred to as "Cruz").  MOON was observed placing two black

trash bags with blue drawstrings in the rear seat of the Cruz.  At approximately 2:40 p.m.

investigators observed CHATMAN JR. exit the door to TARGET RESIDENCE 3 and return

back inside TARGET RESIDENCE 3.  Based on the GPS coordinates on cellular phone 937-

516-9340 and surveillance, investigators believe that CHATMAN JR. was inside TARGET

RESIDENCE 3 from the beginning of surveillance until investigators observed him.  Further

investigators observed no one enter the Mercedes.  Investigators used a law enforcement

database and learned MOON is the registered owner of the black Mercedes and Cruz.

    24.    On November 16, 2020, Affiant obtained a federal search warrant for the

Southern District of Ohio from United States Magistrate Judge Sharon L. Ovington.  The Search

warrant was for the monitoring of a tracking device on the Mercedes.  Upon execution of the

search warrant, investigators began to monitor and track the Mercedes.

    25.    Investigators completed an administrative subpoena to Dayton Power & Light

(hereinafter referred to as "DP&L) requesting customer information for service at TARGET

RESIDENCE 1, TARGET RESIDENCE 2 and TARGET RESIDENCE 3.  On December 7,

2020 DP&L reported customer information for TARGET RESIDENCE 1 is in the name of

Octavia ALLEN.  DP&L reported customer information for TARGET RESIDENCE 2 is in the name of Tiffany TRAMMELL and customer information for TARGET RESIDENCE 3 is in the name of Martyana MOON.

26.     On December 3, 2020, investigators drove to Columbus Ohio where the GPS coordinates on phone cellular phone 516-9340 pinged in an attempt to locate the black Mercedes. Investigators located the Cruz parked in the driveway at 2972 Summit Springs Drive, Columbus Ohio (hereinafter referred to as "TARGET RESIDENCE 4").  Investigators conducted surveillance and observed MOON walk from the front of TARGET RESIDENCE 4 and get mail from a mailbox close to the street.  Investigators observed the black Mercedes exit the attached garage of TARGET RESIDENCE 4 and leave the area driven by MOON.  Investigators could not confirm the rear plate of the black Mercedes but did observe a CarMax license plate on the front of the black Mercedes.  This was the same license plate observed on the black Mercedes on November 2, 2020 at TARGET RESIDENCE 3.  CS-1 informed investigators that CHATMAN JR. was looking to move to Columbus Ohio.

27.     During the evening hours of December 14, 2020 DEA investigators conducted physical surveillance at 2972 Summit Springs Drive, *i.e.*, TARGET RESIDENCE 4. Investigators saw a trash can sitting out at the curb, awaiting to be collected by local waste management.  Investigators were able to obtain the contents of the trash can, which consisted of numerous trash bags.  The bags were transported back to Dayton, where the contents were searched.  A search of the discarded contents led to the discovery of numerous drug trafficking related items.  Investigators found a kilogram wrapper with residue, a large Ziploc style plastic bag with residue, a tin pan with residue.  Two black plastic bag with residue, two pieces of aluminum foil with residue, an empty FoodSaver box, an empty digital scale box, an empty

13

Nutribullet box, an empty Benefiber supplement container. Also found was a Spectrum bill for MOON, numerous boxes with shipping labels addressed to MOON at 2972 Summit Springs Drive and paperwork for CHATMAN JR. The residue from the kilogram wrapper, large Ziploc style bag and tin pan was tested using cobalt reagent having a presumptive positive for the presence of cocaine.

28.    In mid-December 2020, CS-2 and DPD conducted a controlled purchase of suspected fentanyl from an individual believed to be RAINEY at the Food Mart. The controlled purchase was arranged through a non-recorded phone communication between CS-2 and individual believed to be RAINEY. In the course of the communication, CS-2 spoke to the individual believed to be RAINEY at 513-379-1556. During the phone communication, the individual believed to be RAINEY directed CS-2 to go to the Food Mart for the purchase.

29.    In preparation for the mid December 2020, controlled purchase, DPD met with CS-2 at a neutral location, searched CS-2 for contraband, and provided CS-2 with buy money to purchase fentanyl from an individual believed to be RAINEY. During the search of CS-2, no contraband was found.

30.    During the course of the operation leading to the controlled purchase in mid-December 2020, DPD conducted surveillance of various locations, including the Food Mart and TARGET RESIDENCE 1. Prior to the controlled purchase, Affiant was monitoring real time surveillance from a pole camera facing the rear of TARGET RESIDENCE 1 and observed a black male, matching the physical description of RAINEY, exit the rear door of TARGET RESIDENCE 1 and enter a black 2005 Chrysler 300 Ohio license plate JGS3024 (hereinafter referred to as "Chrysler") parked behind TARGET RESIDENCE 1. The Chrysler left the area.

DPD had surveillance on Forest Avenue as this was the direct route to the Food Mart. DPD did not observe the Chrysler travel on Forest. DPD observed the black male matching the physical description of RAINEY walk from West Mumma Avenue to the Food Mart and meet with CS-2. DPD observed the black male matching the physical description of RAINEY walk back toward West Mumma Avenue. Affiant observed the Chrysler return to the rear of TARGET RESIDENCE 1 on the pole camera. Affiant observed the black male matching the physical description of RAINEY exit the Chrysler and enter the rear of TARGET RESIDENCE 1. Based on surveillance, investigators believe that the individual matching the physical description of RAINEY driving the Chrysler went an alternate route using a residential neighborhood, parked on West Mumma Avenue and approached CS-2 on foot. Investigators used a law enforcement database and learned the Chrysler 300 was registered to Tracy GIBSON. GIBSON's address is 236 Kenilworth Avenue, Dayton Ohio. In September 2020, CS-1 stated RAINEY stored additional drugs at his sister's house. Investigators were able to identify 236 Kenilworth Avenue as the address. Investigators believe GIBSON is RAINEY's sister. CS-1 provided additional information to investigators that RAINEY was looking to purchase a Chrysler 300 prior to the mid December 2020 controlled purchase. CS-1 made a recorded phone call to RAINEY on cellular phone 937-241-4542. RAINEY stated he purchased a Chrysler 300 to sell quick.

31.     DPD followed CS-2 to a neural location and collected a bag of suspected fentanyl from CS-2. CS-2 told DPD that the black male sold fentanyl to CS-2. DPD showed a photograph of RAINEY from (OHLEG) to CS-2. CS-2 identified the photograph of RAINEY as "B" who sold CS-2 fentanyl. The suspected fentanyl was later submitted to the Miami Valley Regional Crime Laboratory for analysis and was found to be fentanyl.

32.     In late December 2020, CS-3 relayed that CHATMAN JR. has ties to Mexicans. CS-3 stated CHATMAN JR. is sourced drugs from a Mexican male doing a life sentence in an Ohio prison.  CS-3 stated CHATMAN JR. was in prison with the Mexican male and that is how the Mexican male became a source of supply of drugs for CHATMAN JR.  CS-3 stated CHATMAN JR. is currently selling crystal methamphetamine and heroin.  CS-3 stated CHATMAN JR. has children with the sister of a female, who owned a beauty salon, that was raided several years ago by the DEA.  CS-3 stated CHATMAN JR. introduced the female, who owned the beauty salon, to the Mexican male doing a life sentence in prison.  CS-3 stated he/she believed the female, who owned the beauty salon, and the Mexican male doing a life sentence are or were married.  Investigators know the based on knowledge that the DEA Dayton Resident Office conducted a drug investigation in 2017 into Eduardo BONNILLA-BARILLAS (BONILLA).   Based on knowledge of the investigation, investigators know that the Mexican male doing a life sentence is Eduardo BONNILLA-BARILLAS.  Investigators know based on knowledge that the female, who owned the beauty salon, is Takeea TRAMMELL.  TRAMMELL is currently on federal probation for Conspiracy to Launder Money in the Southern District of Ohio.[3]

33.     In October 2020, a pole camera was installed facing the rear of TARGET RESIDENCE 1 and a parking lot across from the Dayton Early College Academy (DECA) located at 200 Homewood Avenue, Dayton Ohio.

34.     During the course of a 30-day period, investigators monitored GPS coordinates on cellular phone 937-516-9340.  Investigators also monitored a tracking device on the Mercedes

---

[3] CS-3 has provided information in the past that has been proven to be true and accurate through independent investigation and led to the issuance of search warrants and the recovery of illegal drugs, money and weapons.  CS-3 provided this information on a voluntary basis in hopes of monetary reward.

for a 45-day period.   The GPS coordinates on cellular phone 937-516-9340 placed the cellular

phone used by CHATMAN JR. commonly in the area of TARGET RESIDENCE 3 during early

morning hours consistent with CHATMAN JR. residing at TARGET RESIDENCE 3.  The

tracking device commonly placed the Mercedes at TARGET RESIDENCE 3 during the early

morning hours.  The Mercedes commonly ended the night at TARGET RESIDENCE 3.  Based

on GPS coordinates on cellular phone 937-516-9340, the tracking device on the Mercedes and

use of the pole camera at TARGET RESIDENCE 1, investigators were able to routinely observe

the Mercedes in the rear parking lot behind TARGET RESIDENCE 1.  While monitoring the

surveillance video from the pole camera, investigators commonly observed a black male

believed to be RAINEY exit TARGET RESIDENCE 1 and either stand by the Mercedes or enter

the passenger side.  Investigators observed a black male that investigators believe to be

CHATMAN JR. exit the rear door of TARGET RESIDENCE 1 and the Mercedes leave the area.

a.    For instance, on November 19, 2020, investigators were monitoring the

pole camera facing the rear of TARGET RESIDENCE 1.  Investigators observed the Mercedes

arrive in the parking lot behind TARGET RESIDENCE 1.  A black male that investigators

believed to be RAINEY exited the rear door of TARGET RESIDENCE 1 and entered the

passenger door of the Mercedes.  A short time later, the black male investigators believed to

RAINEY exited the Mercedes and entered the rear door of TARGET RESIDENCE 1.  The

Mercedes left the area.  During this time, cellular phone 937-241-4542 used by RAINEY was

pinging in the area of TARGET RESIDENCE 1.

b.    For instance, investigators monitored the pole camera surveillance video

facing the rear of TARGET RESIDENCE 1 from December 26, 2020 close to midnight.

Investigators observed the Mercedes arrive in the parking lot behind TARGET RESIDENCE 1.

17

The Mercedes parked with the driver side out of view. The Mercedes was parked facing the rear of TARGET RESIDENCE 1. A dark colored sedan arrived in the parking lot and went out of view. Numerous individuals came from the driver side area of the Mercedes and out of view east of the Mercedes and entered the rear door of TARGET RESIDENCE 1. While monitoring the surveillance video, investigators observed numerous individuals come from the rear door of TARGET RESIDENCE 1 and go out of view into the parking lot. Just after midnight, two black males exited the rear door of TARGET RESIDENCE 1 and walked to the front of the Mercedes. Investigators believe the two black males were CHATMAN JR. and RAINEY. The black male who matched the physical description of CHATMAN JR. went to the driver side of the Mercedes just out of view. The other black male who matched the physical description of RAINEY went back to and entered the rear door of TARGET RESIDENCE 1. The Mercedes left the area. The GPS tracker on the Mercedes was showing in the rear of 615 Forest Avenue during this time. Based on surveillance video from the pole camera facing the rear of TARGET RESIDENCE 1, investigators believe CHATMAN JR., commonly arrives and re ups RAINEY with drugs.

c. Further investigators believe based on CHATMAN JR's regular visits to TARGET RESIDENCE 1 and his role in the DTO that he is overseeing the drug operation occurring at the residence. From there, RAINEY traffics drugs from TARGET RESIDENCE 1. Investigators monitored surveillance video throughout the investigation from the pole camera. Surveillance video showed multiple vehicles arrive in the rear parking lot of TARGET RESIDENCE 1. Individuals would exit the vehicles and enter the rear door to TARGET RESIDENCE 1. A short time later, individuals would exit the rear door and leave in vehicles. Investigators commonly observed multiple people to include a male who investigators believe to be RAINEY exit and enter the rear door of TARGET RESIDENCE 1 and leave the area in

18

vehicles and return later and enter the rear door. Based on my training and experience, this activity is consistent with drug activity occurring at an active drug house.

        d.      While monitoring the GPS coordinates on cellular phone 937-516-9340 investigators learned that cellular phone 937-516-9340 was in Columbus, Ohio on a frequent basis. Based on the tracking device on the Mercedes and physical surveillance at TARGET RESIDENCE 3, investigators believe that CHATMAN JR. was traveling to TARGET RESIDENCE 4 and returning to TARGET RESIDENCE 3 with MOON in the black Mercedes and/or the Cruz. For instance, on November 19, 2020, investigators did a spot check on TARGET RESIDENCE 3 and observed the Mercedes in the parking lot. Investigators did not observe the black Mercedes in the parking lot. The GPS coordinates on cellular phone 937-516-9340 were pinging in Columbus Ohio. Investigators continued to monitor GPS coordinates on cellular phone 937-516-9340. Based on the continued monitoring of GPS coordinates on cellular phone 937-516-9340 investigators believed CHATMAN JR. was traveling back to TARGET RESIDENCE 3 in the black Mercedes or Cruz. As the GPS coordinates on cellular phone 937-516-9340 arrived in the area of TARGET RESIDENCE 3 investigators observed the black Mercedes with a CarMax license plate in the rear in the parking lot of TARGET RESIDENCE 3.

        35.      Based on the foregoing as well as my training, experience and knowledge of drug trafficking modus operandi described below, Affiant believes that RAINEY, CHATMAN JR., MOON and others are currently engaged in a lengthy, ongoing drug trafficking scheme. CHATMAN JR. and RAINEY do not appear to be currently employed. Information from a SOI, information from CS-1, controlled buys made by CS-2, information from CS-3 whom have been corroborated and deemed reliable – further implicate RAINEY, CHATMAN JR AND MOON in drug trafficking activity. That activity is linked to the TARGET RESIDENCES. RAINEY lists

TARGET RESIDENCE 1 as his reporting address with parole and appears to reside at TARGET RESIDENCE 1. DPD and CS-2 made controlled buys of fentanyl from RAINEY. CHATMAN JR. and the Mercedes has been frequently been observed on the pole camera surveillance video by investigators in the parking lot of TARGET RESIDENCE 1. This is a strong indicator that RAINEY has hidden contraband, including drugs, currency and firearms at TARGET RESIDENCE 1. CHATMAN JR. lists TARGET RESIDENCE 2 as his reporting address with parole. Surveillance and the tracking device on the Mercedes show that CHATMAN JR. is commonly at TARGET RESIDENCE 2 for periods of time. This indicates that CHATMAN JR. keeps items of value – likely currency at TARGET RESIDENCE 2. CHATMAN JR. appears to reside at TARGET RESIDENCE 3 and makes visits to TARGET RESIDENCE 1 AND TARGET RESIDENCE 4. CHATMAN JR. has not disclosed TARGET RESIDENCE 3 AND TARGET RESIDENCE 4 to APA – a strong indicator that he has hidden contraband, including drugs, currency and firearms at one or more of these TARGET RESIDENCES. GPS coordinates from cellular phone 937-516-9340 and the tracker on the Mercedes place CHATMAN JR and the Mercedes at each of these residences on a frequent basis. Additionally, TARGET RESIDENCE 4 also likely contains evidence of drug trafficking activity. GPS coordinates on cellular phone 937-516-9340 place CHATMAN JR. in the area of TARGET RESIDENCE 4. MOON has been observed leaving TARGET RESIDENCE 4. A trash pull operation conducted at TARGET RESIDENCE 4 on December 14, 2020 revealed evidence of a location used to weigh, use a cutting agent to break down drugs, package and re distribute drugs. Additionally paperwork in name of MOON and CHATMAN JR. was located during the trash pull operation.

36.     Investigators conducted spot checks at TARGET RESIDENCE 3 on December 22, 2020 and December 27, 2020 and observed the Mercedes and black Mercedes in the parking lot.

37.     A records check was conducted on December 28, 2020 using a law enforcement database.  The black Mercedes and Cruz are registered to MOON with an address of TARGET RESIDENCE 4.  Based on my training and experience, this residence is probably used to distribute smaller amounts of narcotics.

38.     Based on my training, experience, participation in other drug investigations, my participation in this investigation, and my discussions with other experienced agents and officers of the Drug Enforcement Agency (DEA), and other federal state, and local law enforcement officers, your affiant has learned:

    a.  That narcotics traffickers, such as those who deal in distribution quantities of fentanyl  frequently maintain at their residence, place of business or other secure premises to which they have access, amounts of fentanyl and amounts of currency in order to maintain and finance their ongoing narcotics business;

    b.  That narcotics traffickers frequently maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the transportation, ordering, sale and distribution of controlled substances, including cocaine.  Furthermore, your Affiant from experience that the aforementioned books, records, receipts, notes, ledgers, etc., are generally maintained where the traffickers have ready access to them;

    c.  That narcotics traffickers use and maintain electronic devices in furtherance of their illegal activities, to include but not limited to, mobile telephones, computers, paging devices, answering machines, police scanners and money counters to facilitate their criminal activity.

    d.  That it is common for drug traffickers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residence or place of business, for ready access and to conceal same from law enforcement authorities;

e. That persons involved in drug trafficking conceal proceeds of drug sales, records of drug transactions, firearms, ammunition, cashes of drugs, large amounts of currency, financial instruments, keys to safe deposits boxes, precious metals, jewelry, and other items of value and/or proceeds of drug transactions and/or evidence of financial transactions relating to obtaining, transferring, secreting or spending large sums of money made from narcotics trafficking in their residences and in other secure locations including places of business in order to conceal them from law enforcement authorities;

f. That narcotics traffickers commonly maintain records of telephone calls in billing statements, addresses or telephone numbers in books or papers which reflect names, addresses and telephone numbers of their associates in their narcotics trafficking organization, as well as photographs of themselves and their drug trafficking associates;

g. That traffickers in controlled substances, namely cocaine, commonly keep paraphernalia for the packaging, weighing, processing, and distributing cocaine. That these paraphernalia include but are not limited to scales, plastic bags, baggies, heat sealers, and other utensils used to distribute cocaine;

h. That your Affiant is aware that the courts have recognized that unexplained wealth is probative evidence of crimes motivated, at least in part, by greed, in particular, trafficking in a controlled substance.

i. That traffickers utilize vehicles to transport and conceal narcotics, and to conduct transactions inside of vehicles, out of the view of the public eye.

j. That traffickers frequently maintain firearms and weapons to protect both the controlled substances and proceeds derived from their sales. Drug traffickers maintain firearms as a use of force, or threat of force, against rival drug dealers and/or delinquent customers.

## CONCLUSION

39.    Based on the information above, your Affiant submits that there is probable cause to believe that the specified federal offenses have been committed and that a search of **TARGET RESIDENCE 1, TARGET RESIDENCE 2, TARGET RESIDENCE 3 and TARGET RESIDENCE 4,** to include all rooms, attics, basements, surrounding grounds, curtilage, storage areas, outbuildings and vehicles of any kind located in or on **TARGET**

**RESIDENCE 1, TARGET RESIDENCE 2, TARGET RESIDENCE 3 and TARGET RESIDENCE 4** will lead to the discovery of the items outlined above (described more fully in Attachment E, incorporated by reference herein), which items constitute evidence, fruits, and/or instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) (possession with the intent to distribute and to distribute controlled substances), 843 (use of a telephone communication facility), and 846 (conspiracy),

38.     Your affiant therefore, respectfully requests that the Court authorize the requested warrants.

Respectfully submitted,

JASON BARNES
(Affiliate)

Digitally signed by JASON BARNE
(Affiliate)
Date: 2021.01.06 08:47:25 -08'00'

Jason Barnes, Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me on January ___7th___, 2021.

Sharon L. Ovington
United States Magistrate Judge

23

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

The property to be searched is:

<u>615 Forest Avenue, Dayton, Ohio</u> **Target Residence 1** is a two story single family structure, with blue siding and white trim around the windows. The numbers 615 are listed in black on a support structure on the covered front porch.

OVERALL RESIDENCE PHOTO



## **ATTACHMENT B**

## **PROPERTY TO BE SEARCHED**

2106 Picadilly Avenue, Dayton, Ohio **Target Residence 2** is a single story single family structure, with white siding. The numbers 2106 are listed in black to the left of the front door.

OVERALL RESIDENCE PHOTO



**ATTACHMENT C**

**PROPERTY TO BE SEARCHED**

<u>7663 Shady Water Lane, Miami Township, Ohio</u> **Target Residence 3** is an apartment  with a black door and blue siding .  7663 Shady Water Lane is ground level apartment located at the Mad River Luxury Apartments.  The numbers 7663 are listed in black to the right of the black door leading to parking lot.

OVERALL RESIDENCE PHOTO



## **ATTACHMENT D**

## **PROPERTY TO BE SEARCHED**

<u>2972 Summit Springs Drive, Columbus, Ohio</u> **Target Residence 4** is a two story single family structure, with grey and tan siding with white trim around the windows. The numbers 2972 are listed in black with grey background to the left of the front door.

OVERALL RESIDENCE PHOTO



**ATTACHMENT E**

**PROPERTY TO BE SEIZED**

The items to be searched for and seized are evidence, contraband, fruits of crime, and other items illegally possessed, as well as property designed for use, intended for use, relating to violations of 21 U.S.C. §§ 841(a)(1). 843(b), and 846 including, but not limited to:

A.  Log books, records, payment receipts, notes, and/or customer lists, ledgers, and other papers or electronic records relating to the transportation, ordering, purchasing, processing, and distribution of controlled substances.

B.  Papers, tickets, notices, credit card receipts, travel schedules, travel receipts, passports, and/or records, and other items relating to domestic and foreign travel to obtain and distribute narcotics and narcotics proceeds, including, but not limited to airline receipts, vehicle rental receipts, credit card receipts, travel schedules, diaries, hotel receipts, truck logs, travel agency vouchers, notes, records of long distance telephone calls, e-mail and other correspondence.

C.  Address and/or telephone books and papers reflecting names, e-mail and physical addresses and/or telephone numbers of individuals, partnerships, or corporations involved in drug trafficking.

D.  Financial records, financial statements, receipts, statements of accounts and related bank records, money, drafts, letters of credit, money orders and cashier's checks receipts, passbooks, bank checks, escrow documents, and other items evidencing the obtaining, secreting, transfer, and/or concealment of assets and the obtaining, secreting, transferring, concealment, and/or expenditure of money.

E.  Electronic equipment such as surveillance video and related equipment, pagers, computers, electronic organizers, facsimile machines, cellular telephones, caller ID, telephone answering machines, police scanners and two-way radios, money counters.

F.  Cellular telephones, including all associated telephone records and stored electronic data that may be used in the commission of these offenses;

G.  United States currency, precious metals, coins bullion, jewelry, and financial instruments, including, but not limited to stocks and bonds.

H.  Photographs and/or photographic albums or video tapes and recordings of houses and other real estate, automobiles, and of other assets, persons, and/or controlled substances.

I.  Indicia of occupancy, residency, and/or ownership of the premises and vehicles including, but not limited to utility and telephone bills, canceled envelopes, keys, deeds, tax bills, titles, and vehicle registrations.

J.      Illegal drugs, including, but not limited to fentanyl, cocaine and other materials, paraphernalia and/or equipment and tools used in the drug trade, including heat sealing equipment.

K.      Firearms and ammunition.